752 F.2d 500
 36 Fair Empl.Prac.Cas. 1285,
36 Empl. Prac. Dec. P 34,940
Jerue B. HAWKINS, Jr., Plaintiff-Appellee,
v.
Frank N. BOUNDS, Post Master for Oklahoma City, Oklahoma,
U.S. Postal Service; and Blanks Leon Dudley,
former Post Master for Oklahoma City,
Oklahoma, U.S. Postal Service,
Defendants-Appellants.
 No. 82-1617.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 14, 1985.
 
 Charles F. Kappler, Atty., U.S. Postal Service, Washington, D.C. (Stephen E. Alpern, Associate Gen. Counsel, Washington, D.C., with him on the brief), for defendants-appellants.
 Larry Dries, Peekskill, N.Y. (Lewis Barber, Jr. of Braswell & Barber, Oklahoma City, Okl., on the brief), for plaintiff-appellee.
 Before BARRETT, LOGAN and SEYMOUR, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 Jerue Hawkins, a black Postal Service employee, brought this suit under 42 U.S.C. Secs. 2000e et seq. (1982) (Title VII) against Frank Bounds, Postmaster for Oklahoma City, and Blanks Leon Dudley, the former Oklahoma City Postmaster. Hawkins alleged that defendants' promotional practices discriminated against him because of his race. After a trial to the bench, the court found in favor of Hawkins and ordered back pay and equitable relief. Defendants appeal and we affirm.
 
 I.
 
 2
 The facts in this case are largely undisputed. Hawkins has been employed with the Oklahoma City Post Office since 1957. He began his employment at a level four and was promoted thirteen years later to a level six. In 1978, after twenty-one years, he was promoted to a level fifteen, an initial supervisory position. During his years with the Post Office Hawkins obtained an associate degree in computer programming, a college degree in mathematics, and a master's degree in business administration. He is an adjunct faculty member teaching computer programming at the Oklahoma State University Technical Institute.
 
 
 3
 Hawkins initially applied for promotion in 1975. Although he was told by the Postmaster that he needed a master's degree, the position was given to a person with no college degree. In 1979 Hawkins was one of twelve employees who applied for a level twenty position. When he was not interviewed for this vacancy, he filed this lawsuit challenging defendants' promotion procedures.
 
 II.
 
 4
 During the time at issue here, when a position became available the Postmaster would select a three-member promotion review board to review the applications and choose those applicants it wished to interview. Although under the Post Office manual a black was to be appointed to a review board whenever possible, no other standards applied and the selection of the board members was within the Postmaster's discretion. No official guidelines were established regulating the board's choice of applicants to interview or its choice of those to recommend as best qualified. The criteria were set by the particular board chairmen and varied from board to board. After interviewing the applicants, the board would prepare a list of those it found best qualified and present the list to the supervisor responsible for filling the vacancy. No standards guided the selecting supervisor's choice from among those on the list recommended by the board--the matter was entirely within the selecting official's discretion.
 
 
 5
 The record reflects that the Post Office had a practice of "detailing" an employee into a higher level position that was vacant or temporarily unfilled. A detailed employee obtained prior experience in the job, thereby giving him an advantage over others seeking promotion to the position. The availability of a detail assignment was not announced or publicly posted, and the choice of an employee was entirely within the discretion of the assigning official. Under the regulations, an employee was not to be detailed to a temporarily unfilled position for more than ninety days, or to a vacant position for more than sixty days. Everyone in the Oklahoma City Post Office who had been promoted to a level twenty or above had been detailed to the position first.
 
 
 6
 Hawkins presented undisputed evidence that blacks were statistically underrepresented above level fifteen and none held positions above level nineteen. Significantly, several Post Office employees testified that no blacks had ever been detailed in the Oklahoma City area to a level twenty or higher before this lawsuit. Phillip Owen, who had been a member of the review board for Hawkins' application, testified that as a supervisor he had never recommended a black for any detail assignment.
 
 
 7
 The board that reviewed Hawkins' application for the 1979 level twenty position consisted of two white men and a white woman. They selected seven of the twelve applicants to interview and recommended five to the Postmaster. The person chosen by the Postmaster had been detailed to the position three times for a total of 192 days, in apparent violation of applicable regulations, thus giving her supervisory experience in that position. Board member Owen testified that the primary reason Hawkins had not been interviewed was his lack of supervisory experience. Another board member also testified that she felt Hawkins did not have enough supervisory experience. Hawkins had never been detailed to a level higher than fifteen.
 
 
 8
 The thrust of Hawkins' position at trial was that defendants' practice of detailing an employee to a position, and then relying on the detailing experience when filling that position, had a disparate impact against blacks. The trial court agreed, finding that Hawkins' statistics proved a prima facie case of race discrimination in defendants' employment practices. The court further found that the statistical underrepresentation of blacks in the higher level management positions was the result of its training procedures, specifically the practice of permitting the detailing of employees without guidelines and then giving great weight to the detailing experience. On appeal, defendants contend that Hawkins' claim must be considered under the disparate treatment theory, and that under this analytical framework the district court's findings are clearly erroneous.
 
 
 9
 "Disparate treatment and disparate impact are 'alternative theories upon which a right to relief under Title VII may be established in a given case.' " Williams v. Colorado Springs, Colorado, School District, 641 F.2d 835, 839 (10th Cir.1981) (quoting Wright v. National Archives & Records Service, 609 F.2d 702, 711 (4th Cir.1979)). Disparate treatment analysis is applied when a plaintiff alleges that an employer has treated him less favorably because of his race. Id. "The disparate impact theory of discrimination has been applied where clearly identifiable employment requirements or criteria, regardless of whether there was intent to discriminate, resulted in a less favorable impact on a protected group." Coe v. Yellow Freight System, Inc., 646 F.2d 444, 450 (10th Cir.1981).[1]
 
 
 10
 Defendants argue that the disparate impact theory is not applicable in this case because the detailing practice complained of involved the use of subjective factors rather than objective criteria. We disagree. Under the established law in this circuit, impact analysis is proper when a plaintiff claims that the use of subjective employment practices has an adverse effect on a protected group. In Coe we pointed out that the impact theory is appropriate when "the employer habitually engaged in a routine, general method of determining whether applicants or employees were qualified for particular jobs, promotions or transfers .... Frequently these general policies involve subjective standards under the guise of which discrimination can more easily be practiced." Id. at 450-51 (emphasis added); see also Lasso v. Woodmen of the World Life Insurance Co., 741 F.2d 124, at 1245-1246 (10th Cir.1984) (impact analysis applied to promotion policy based on "leadership ability, getting along with the person's peers, and the person's experience background"); Williams, 641 F.2d 835 (impact analysis applied to teacher hiring system which vested almost complete discretion in school principals); Muller v. United States Steel Corp., 509 F.2d 923 (10th Cir.) (impact analysis applied to foreman appointments made by one with uncontrolled discretion), cert. denied, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975). Thus the trial court properly considered the employment practices at issue here under the disparate impact theory.
 
 
 11
 In this case the trial court's finding that Hawkins proved a prima facie case is supported by undisputed evidence. A prima facie showing of disparate impact may be established by statistical evidence. Coe, 646 F.2d at 451; Muller, 509 F.2d at 927. The statistical data establishes that blacks were rarely promoted above level fifteen and had never been promoted above level nineteen. The evidence also shows that the selection of employees for a detail was totally subjective and that blacks were never detailed to the higher level positions. Under these circumstances, an inference can clearly be made that defendants' subjective detailing practice adversely affected the promotion of blacks beyond the initial supervisory level. Cf. Muller, 509 F.2d at 926-28.
 
 
 12
 Once the plaintiff makes a prima facie showing that a practice has an adverse impact, the burden shifts to the employer to prove that the practice is mandated by business necessity. Williams, 641 F.2d at 840-41. "The term 'necessity' connotes that the exclusionary practice must be shown to be of great importance to job performance to rebut a prima facie case." Id.; see also Muller, 509 F.2d at 928-29. The record in this case contains no evidence tending to show that the practice of totally discretionary detailing or its use in the promotion procedure were required by business necessity. Accordingly, the trial court properly concluded that Hawkins has been a victim of unlawful employment practices based upon race discrimination.
 
 
 13
 AFFIRMED.
 
 BARRETT, Circuit Judge, concurring:
 
 14
 I fully concur in Judge Seymour's opinion based upon the record in this case. I am concerned that the value of subjective evaluations may, by inadvertance, not have been given the weight in the ultimate determination of employment discrimination it is entitled to, even though in this case there are no subjective evaluations to weigh.
 
 
 15
 It is my view that subjective rationale is entitled to as much weight in these cases as it is in any other case where the trier of fact must resolve conflicting evidence, and determine the credibility of witnesses, taking into consideration their appearance and demeanor. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), recognized that subjective reasoning was to be received and given such weight as the trier of fact deemed proper. In Burrus v. United Telephone Co. of Kansas, Inc., 683 F.2d 339 (10th Cir.1982), this court, following Burdine, examined the issue of subjective qualifications and there held that the plaintiff's failure to meet the employer's subjective criteria did not defeat the plaintiff's prima facie case. Later, in Verniero v. Air Force Academy Sch. Dist. No. 20, 705 F.2d 388 (10th Cir.1983), we held otherwise. We there stated:
 
 
 16
 In a recent case we examined the issue of subjective qualifications and held that failure to meet an employer's subjective criteria could not defeat a plaintiff's prima facie case. Burrus v. United Telephone Co., 683 F.2d at 342. Such is not the case here. Verniero was concededly qualified for both positions. She established her prima facie case. She was rejected for both positions based on subjective opinions of evaluators serving on the screening committees. Under these circumstances, Verniero is entitled "to the benefit of an inference of discrimination, which inference requires the defendant ... to come forward and articulate legitimate reasons for her non-selection." Burrus v. United Telephone Co., supra at p. 342 (quoting Bauer v. Bailar, 647 F.2d 1037 (10th Cir.1981)).
 
 
 17
 The School District, as the trial court found, did come forward and articulate [subjective] reasons for Verniero's non-selection ...
 
 
 18
 Subjective evaluations play a legitimate part in an employer's determination whether an employee has the ability to get along with others. This is a legitimate business reason for the non-selection of Verniero. (Emphasis supplied.)
 
 
 19
 705 F.2d at pp. 391, 392.
 
 
 
 [1]
 For a thorough discussion of the distinctions between the elements of proof for these two theories, see this court's opinion in Williams v. Colorado Springs, Colorado, School District, 641 F.2d 835, 839-42 (10th Cir.1981)