Herbert FAULKNER; Charles Titus; Edward J. Gonzales; Ralph Cravens; John Martinez; Alfred Acuna; Anthony Medina; and James Hodge, Plaintiffs–Appellants,

v.

.SUPER VALU STORES, INC., Defendant–Appellee.

No. 91–1273.

United States Court of Appeals, Tenth Circuit.

Sept. 1, 1993.

Patricia A. Coan of Patricia A. Coan, P.C., Denver, CO, for plaintiffs-appellants.

Carl F. Eiberger (Paul F. Hodapp and Kay–Dawn Allen with him on the briefs), of Eiberger, Stacy, Smith & Martin, Denver, CO, for defendant-appellee.

Steven S. Zaleznick, Cathy Ventrell–Monsees, and Robert L. Liebross, American Ass'n of Retired Persons, Washington, DC, on the brief for amicus curiae American Ass'n of Retired Persons.

Before BRORBY, BARRETT, and EBEL, Circuit Judges.

BRORBY, Circuit Judge.

The plaintiffs/appellants submitted applications for vacant warehousemen positions at Super Valu Stores, Inc. but were not considered for the vacancies. Plaintiffs then brought an age discrimination action against Super Valu under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1988). The jury returned a verdict in favor of Super Valu and the plaintiffs appeal, alleging various errors in the district court's jury instructions and evidentiary decisions.

## FACTUAL BACKGROUND

Super Valu Stores, Inc., the defendant/appellee, is a wholesale grocer with a warehouse facility in Denver, Colorado. In 1986, one of Super Valu's Denver competitors, Associated Grocers, declared bankruptcy and Super Valu purchased Associated Grocers' warehouse. Due to an expected increase in business resulting from Associated Grocers' bankruptcy, Super Valu decided to hire a large number of new employees including warehousemen and drivers. Super Valu was inundated with applications for these positions.

The plaintiffs/appellants worked as warehouseman at Associated Grocers and applied for the same position at Super Valu after Associated Grocers' demise. All the plaintiffs were over forty years of age, had six to twenty-two years of experience as warehousemen at Associated Grocers, and were members of the International Brotherhood of Teamsters, Local 435, the same union representing warehousemen at Super Valu. Super Valu hired approximately 200 warehousemen, but chose not to consider applications from Associated Grocers' ex-warehousemen because Super Valu·allegedly feared acts of

vandalism, disruption, and sabotage, and believed the disgruntled Associated Grocers' ex-employees would have an adverse effect on employee morale.

The plaintiffs, alleging age discrimination, filed charges against Super Valu with the Equal Employment Opportunity Commission and subsequently received right to sue letters therefrom. The plaintiffs then brought an action in district court under the ADEA based on theories of disparate treatment and impact. After a two-week trial, the jury concluded Super Valu had not discriminated against the plaintiffs on the basis of age.

On appeal, the plaintiffs claim the disparate treatment and disparate impact jury instructions were erroneous and allege the jury instructions as a whole were confusing, overly technical, and failed to state applicable law. Plaintiffs further allege the district court improperly admitted evidence concerning Super Valu's business justifications and erred in excluding certain rebuttal exhibits proffered by the plaintiffs.[1]

## DISCUSSION

Under the ADEA, "[i]t shall be unlawful for an employer ... to fail or refuse to hire ... any individual ... because of such individual's age." 29 U.S.C.A. § 623(a) (West 1985). This protection applies to individuals "who are at least 40 years of age." 29 U.S.C.A. § 631(a) (West 1985 & Supp.1993). The ADEA is considered a broad prohibition against arbitrary age discrimination in the work place. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 120, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985).

### I. Jury Instructions

■■■ The plaintiffs allege multiple errors in the jury instructions. In reviewing such allegations, this court examines the record as a whole to determine whether the instructions state the applicable law and provide the jury with an appropriate understanding of

1. Plaintiffs also allege the district court abused its discretion in permitting pension and Social Security benefits earned from prior, unrelated employment to be offset from any remedial award. We do not reach this issue of damages

the issues and the legal standards to apply. *Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1271 (10th Cir.1988). "[N]o particular form of words is essential if the instruction as a whole conveys the correct statement of the applicable law." *Perrell v. FinanceAmerica Corp.*, 726 F.2d 654, 656 (10th Cir.1984). An erroneous jury instruction requires reversal "only if we have substantial doubt whether the instructions, taken together, properly guided the jury in its deliberations." *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 468 (10th Cir.), *cert. denied*, 498 U.S. 898, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990).

#### A. Disparate Treatment

■ Plaintiffs first allege errors in the jury instructions which relate to their disparate treatment claim. Disparate treatment is a cognizable theory of discrimination under the ADEA. *Hazen Paper Co. v. Biggins*, — U.S. ——, ——, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993); *see Merrick v. Northern Natural Gas Co.*, 911 F.2d 426, 429 (10th Cir.1990). A disparate treatment claim exists when an employer treats an individual less favorably than others because of his or her protected status. *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir.1991). Because disparate treatment is a form of intentional discrimination, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Biggins*, — U.S. at ——, 113 S.Ct. at 1706. *See also Coe v. Yellow Freight System, Inc.*, 646 F.2d 444, 448 (10th Cir.1981).

The basic allocation of burdens for a disparate treatment claim is set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981).[2]

as plaintiffs fail on the merits of their age discrimination suit.

2. *McDonnell Douglas* and *Burdine* involve disparate treatment claims under Title VII of the Civil

Generally, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093–94. Once the plaintiff establishes a prima facie case, a presumption of unlawful discrimination is created and the burden shifts to the employer "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate nondiscriminatory reason." *Id.* at 254, 101 S.Ct. at 1094. The employer "need not persuade the court that it was actually motivated by the proffered reasons," but satisfies its burden merely by raising "a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* at 248, 254, 101 S.Ct. at 1089, 1094. If the burden of production is carried by the defendant, the plaintiff is given the opportunity to prove the reasons provided by the employer are a pretext for discrimination. *Id.* at 253, 101 S.Ct. at 1093. The plaintiff retains the ultimate burden of proving he or she was the victim of intentional discrimination. *Id.*

Plaintiffs claim the disparate treatment jury instructions misstated the law by shifting the jury's focus from the employer's motivation to its business judgment.

Rights Act, but the same allocation of burdens and proof is applied to claims under the ADEA. *See MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1119 (10th Cir. 1991); *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1420 (10th Cir.1991).

3. Jury instruction number 13 states as follows:

In order to prevail on his first theory of unlawful age discrimination, "disparate treatment," each plaintiff must prove, by a preponderance of the evidence, that his age was a determining factor in defendant's failure to hire him. However, a plaintiff need not prove that age was the sole or exclusive motivation for defendant's failure to hire him. Age is a determining factor if a plaintiff would have been hired except for his age. A disparate treatment claim is a claim of intentional discrimination.

Plaintiffs are not required to produce direct evidence of unlawful motive. Discrimination, if it exists, is seldom admitted, but is a fact which you may infer from the existence of other facts.

In deciding whether age was a determining factor in defendant's failure to hire each plaintiff, you must first consider whether the plaintiff has established each of the following elements by a preponderance of the evidence:

A proper jury instruction in a disparate treatment action under the ADEA should reflect the following:

The essence of the correct formulation of the standard of proof is that it requires the jury to focus on the effect of the factor of age. The jury must understand that it is not enough that age discrimination figure in the decision to demote or discharge; age must "make a difference" ... in the sense that, "but for" the factor of age discrimination, the employee would not have been adversely affected.

*Perrell*, 726 F.2d at 656. The jury instruction should not, however, require plaintiffs to prove the employer's justifications were false if the plaintiffs can prove age was a determinative factor. *E.E.O.C. v. Prudential Federal Sav. & Loan Ass'n*, 763 F.2d 1166, 1170 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985).

We discern no error in the jury instructions. Although plaintiffs focus their appeal on jury instructions numbers 14 and 15, the instructions must be examined in their entirety. Instruction number 13 clearly sets forth the proper allocation of proof under *Burdine* and *McDonnell*, and informs the jury that age must be the determinative factor in the failure to hire.[3] Instructions 14

First: The plaintiff was within the protected age group, that is, he was at least forty years old;

Second: The plaintiff applied for a position with defendant when defendant was seeking applications and was hiring;

Third: The plaintiff was not hired;

Fourth: A younger person was hired in the plaintiff's place.

In this case, the first element is not contested since the defendant admits that plaintiffs were over 40 and within the protected age group when they applied. You should concentrate on the other three elements.

If a plaintiff has proven these four elements, then the defendant must come forward and rebut the plaintiff's case by producing some evidence that the failure to hire the plaintiff was based upon a legitimate, non-discriminatory reason. If the plaintiff can then show by a preponderance of the evidence that the reasons given by the defendant are a pretext, which is a phony or unbelievable reason for the failure to hire the plaintiff, you may infer that the real reason for the failure to hire was the plaintiff's age.

and 15 focus more specifically on Super Valu's rationale for not hiring the plaintiffs and whether the rationale was pretextual.[4] Such instructions are helpful to the jury and do not alter the fact that instruction 13 directed the jury to consider whether age was a determinative factor in Super Valu's decision not to hire the plaintiffs.

The plaintiffs next claim jury instruction number 14 incorrectly stated the law by allowing Super Valu a good faith defense. Instruction number 14 states, in relevant part, that "[i]t is not necessary that defendant, in offering legitimate, non-discriminatory reasons for not hiring plaintiffs, was right or correct in its reasons, but only that it believed them in good faith." (Emphasis added.) Plaintiffs assert good faith is only relevant in determining willfulness under the ADEA. We disagree.

The ADEA allows a plaintiff to recover liquidated damages if an employer "willfully" violates the act, 29 U.S.C. § 626(b), and good faith is readily acknowledged as a defense against charges of willfulness. *Thurston*, 469 U.S. at 128 n. 22, 105 S.Ct. at 625 n. 22; *E.E.O.C. v. Wyoming Retirement System*, 771 F.2d 1425, 1431 (10th Cir.1985); *Mistretta v. Sandia Corp.*, 639 F.2d 588, 595 (10th Cir.1980). Although good faith is generally applicable to willfulness claims, it is not error to include it in an instruction addressing intentional discrimination under the disparate treatment theory. Willful and intentional are similar terms which denote an act done knowingly, purposely and intentionally. *See Black's Law Dictionary* 1434 (5th ed. 1979)

(defining "willful" as "intentional"). Thus, we find no error in using the term "good faith" to help define the concept of intentional discrimination to the jury in an ADEA action. *See Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1548–51 (10th Cir.1988) (wherein this circuit implicitly recognized the similarity between a willfulness claim and a disparate treatment claim under the ADEA).

Our conclusion is supported by an Eighth Circuit decision which upheld a jury instruction that stated the ADEA "is not intended as a vehicle for judicial review of employment decisions which are made in good faith and are not actuated by age bias." *Grebin v. Sioux Falls Indep. Sch. Dist. No. 49–5*, 779 F.2d 18, 20 n. 1 (8th Cir.1985). While the court did not discuss the issue of "good faith," it found the instruction to "represent[ ] a proper, complete charge to the jury." *Id.* at 21.

Plaintiffs next allege jury instructions numbers 14 and 15 in essence told the jury "it had to agree with the employer's stated reasons whether legitimate and reasonable or not." Although the plaintiffs do not point to any specific language in the instructions to support their claim, they are apparently referring to the following sentence in instruction 15: "[y]ou are not to substitute your judgment for that of defendant in its employment decisions."

The ADEA is not a vehicle for reviewing the propriety of business decisions. *Lucas v. Dover Corp., Norris Div.*, 857 F.2d

---

To summarize, the burden of proof as to age discrimination is always on the plaintiff. If a plaintiff fails to meet any part of his burden, your verdict must be for defendant.

4. Jury instruction number 14 provides:

It is not necessary that defendant, in offering legitimate, non-discriminatory reasons for not hiring plaintiffs, was right or correct in its *reasons, but only that it believed them in good* faith.

A plaintiff's mere belief that defendant's explanation is pretextual or that he was treated unfairly, in and of itself, is insufficient as a matter of law to prove age discrimination.

Inconsistencies and implausibilities in defendant's stated reasons for not hiring plaintiffs may support an inference that defendant acted for discriminatory reasons.

Jury instruction number 15 provides:

You should be mindful that the law requires only that employers not discriminate against an employee because of his age. An employer may fail to hire an employee for any other non-discriminatory reason, good or bad, fair or unfair, and you should not second guess that decision. Defendant's reasons do not have to be reasons you would approve of or act upon; neither does the law require an employer to extend any special or favored treatment to employees in a protected age group.

You are not to substitute your judgment for that of defendant in its employment decisions.

Subjective factors are permissible if they are non-discriminatory and are not pretextual to cover up discrimination.

1397, 1404 (10th Cir.1988). As we stated in *Lucas*, "[t]his court will not second guess business decisions made by employers, in the absence of some evidence of impermissible motives." *Id.* at 1403–04. It is also clear, however, that under the shifting allocations of proof applied in ADEA cases a jury must make the factual determination of whether the reasons stated by the employer are pretextual.

The jury instructions, as a whole, state the correct law. Instruction number 13 expressly informs the jury that if a plaintiff can "show by a preponderance of the evidence that the reasons given by the defendant are a pretext, which is a phony or unbelievable reason for the failure to hire the plaintiff, you may infer that the real reason for the failure to hire was the plaintiff's age." Reading instructions 13 and 15 together, the jury is instructed to determine whether the defendant's reasons for not hiring the plaintiffs were pretextual, but not to substitute its judgment for that of the employer. Thus, when read together, the instructions properly guided the jury in its deliberations.

■ Plaintiffs further claim that Super Valu's summary rejection of plaintiffs' applications without considering the plaintiffs' merits makes evidence of the plaintiffs' qualifications at trial irrelevant. This claim apparently contests the appropriateness of the jury instructions which set forth Super Valu's defense that some plaintiffs were not qualified.

To establish a prima facie case of disparate treatment a "plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094; *E.E.O.C. v. University of Oklahoma*, 774 F.2d 999, 1001 (10th Cir.1985), *cert. denied*, 475 U.S. 1120, 106 S.Ct. 1637, 90 L.Ed.2d 183 (1986).[5] An important prerequisite to establishing a prima facie case is that each plaintiff was qualified for the job. In *East Texas Motor Freight*

*System Inc. v. Rodriguez*, 431 U.S. 395, 404 n. 9, 97 S.Ct. 1891, 1897 n. 9, 52 L.Ed.2d 453 (1977), the Supreme Court said "assuming, *arguendo*, that the company's failure even to consider the applications was discriminatory, the company was entitled to prove at trial that the respondents ... were not qualified and would not have been hired in any event." *See also Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 708 (10th Cir.1988) (after-acquired evidence which justified employer's firing of plaintiff "preclud[ed] the grant of any present relief or remedy to [plaintiff]" in his age and religious discrimination suit against employer); *Murnane v. American Airlines, Inc.*, 667 F.2d 98, 101–02 (D.C.Cir.1981) (the fact that plaintiff would not have been hired in any event was valid defense in age discrimination case), *cert. denied*, 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982). Therefore, it was appropriate to instruct the jury regarding Super Valu's defense that some plaintiffs were not qualified to perform warehouse work and would not have been hired in any event.

■ Finally, plaintiffs contend the instructions "failed to instruct the jury that defendant had the burden of proof by at least a preponderance of the evidence to show that plaintiffs were allegedly not qualified." Plaintiffs are correct in asserting that preponderance of the evidence is the appropriate burden of proof. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 254, 261, 109 S.Ct. 1775, 1792, 1796, 104 L.Ed.2d 268 (1989); *Mt. Healthy City Schl. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). The jury, however, was properly instructed as to the applicable burden of proof in instruction 26 which stated, in part, that "[t]he burden of proof is on the defendant to prove *by a preponderance of the evidence* that a plaintiff would not have been hired because he was not qualified, had his application been considered." (Emphasis added.)

### B. Disparate Impact

Plaintiffs next allege various errors in the disparate impact jury instructions. Dispa-

---

**5.** The appropriate model for a prima facie case of disparate treatment is flexible and factually bound. A more detailed standard akin to the instruction given in this case is provided in *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

rate impact is viewed as an alternate theory of relief under Title VII of the Civil Rights Act of 1964. *Hawkins v. Bounds,* 752 F.2d 500, 503 (10th Cir.1985). Some circuits also recognize the theory's applicability to ADEA actions. *See, e.g., Maresco v. Evans Chemetics,* 964 F.2d 106, 115 (2d Cir.1992); *Shutt v. Sandoz Crop Protection Corp.,* 934 F.2d 186, 188 (9th Cir.1991); *Wooden v. Board of Educ. of Jefferson County,* 931 F.2d 376, 379 (6th Cir.1991); *MacPherson v. University of Montevallo,* 922 F.2d 766, 770–71 (11th Cir. 1991); *Leftwich v. Harris–Stowe State College,* 702 F.2d 686, 690 (8th Cir.1983). The Supreme Court, however, has "never decided whether a disparate impact theory of liability is available under the ADEA." *Biggins,* —— U.S. at ——, 113 S.Ct. at 1706.[6]

The Tenth Circuit has never directly addressed whether a disparate impact claim is cognizable under the ADEA.[7] Although this is clearly a threshold question, neither party raised the issue before this court or the district court. For purposes of this case, we believe the prudent course is to merely assume the applicability of the disparate impact analysis without deciding whether it is a viable theory of recovery under the ADEA. *See, Arnold v. United States Postal Service,* 863 F.2d 994, 998 (D.C.Cir.1988) (choosing not to decide whether a disparate impact claim is applicable to ADEA cases), *cert. denied,* 493 U.S. 846, 110 S.Ct. 140, 107 L.Ed.2d 99 (1989); *Fisher v. Transco Services–Milwaukee, Inc.,* 979 F.2d 1239, 1244 n. 3 (7th Cir.1992) (clarifying that the Seventh Circuit only assumes the applicability of a disparate impact claim under the ADEA). Because we find plaintiffs' contentions regarding their disparate impact claim to be without merit, we reserve the legal determination of whether disparate impact is applicable to the ADEA until such time as the issue is properly presented and argued before this

court. In so holding, we apply the relevant Title VII law concerning disparate impact.

■■■■■ A disparate impact theory of recovery involves "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Teamsters,* 431 U.S. at 336 n. 15, 97 S.Ct. at 1855 n. 15. Unlike disparate treatment, the disparate impact theory does not require proof of discriminatory motive or intent. *Id.; Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1242 (10th Cir.1991). The premise behind this approach "is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 987, 108 S.Ct. 2777, 2785, 101 L.Ed.2d 827 (1988).

■■■■■ "To establish a prima facie case of disparate impact discrimination, plaintiffs must show that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group." *Ortega,* 943 F.2d at 1242 (citing *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 656, 109 S.Ct. 2115, 2124, 104 L.Ed.2d 733 (1989)). Statistics may be used by the plaintiffs to establish a prima facie case of disparate impact. *Wards Cove,* 490 U.S. at 650, 109 S.Ct. at 2121; *Ortega,* 943 F.2d at 1243. Once plaintiffs establish a prima facie case, the burden shifts to the employer to produce evidence demonstrating a "business justification" for its employment practices. *Wards Cove,* 490 U.S. at 658, 109 S.Ct. at 2125; *Ortega,* 943 F.2d at 1243. "The burden of persuasion, however, remains with the disparate-impact plaintiff." *Wards Cove,* 490 U.S. at 659, 109 S.Ct. at 2126. If the employer

---

6. In *Thurston,* the Supreme Court found an employer's transfer policy was, on its face, discriminatory under the ADEA. *Thurston,* 469 U.S. at 120–21, 105 S.Ct. at 621–22. Courts have interpreted *Thurston* as involving a disparate impact claim. *See, e.g., Neufeld v. Searle Laboratories,* 884 F.2d 335, 340 (8th Cir.1989). The Supreme Court has since clarified that *Thurston* was a disparate treatment case. *Biggins,* —— U.S. at ——, 113 S.Ct. at 1706.

7. We note that *Lujan v. Walters,* 813 F.2d 1051, 1058 (10th Cir.1987) involved a disparate treatment claim under the ADEA, yet the opinion states "[t]here is no showing of disparate impact." Because the *Walters* court never performed a disparate impact analysis and apparently does not use disparate impact as a term of art, we do not interpret *Walters* as recognizing the validity of a disparate impact claim under the ADEA.

presents such evidence, the plaintiffs may still prevail if they can "persuade the factfinder that 'other tests or selection devices, without a similarly undesirable racial effect, would also serve the employer's legitimate [hiring] interest[s].'" *Id.* at 660, 109 S.Ct. at 2126 (quoting *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975)).[8]

### 1). Business Justification

■ Plaintiffs first object to the disparate impact instructions by arguing the defendant's burden in presenting its business justification was improperly defined. The law on this matter is clearly established:

> [I]n producing evidence of business justification, the "dispositive issue is whether a challenged practice serves, in a significant way, the legitimate employment goals of the employer." The challenged practice or policy need not be "'essential' or 'indispensable' to the employer's business for it to pass muster...." Rather, the "touchstone of this inquiry is a reasoned review of the employer's justification for his use of the challenged practice."

*Ortega,* 943 F.2d at 1244 (citations omitted). Since the jury instructions parallel the language in *Ortega,* we find no error.[9]

Plaintiffs next argue that a business justification offered by an employer must be "related to each *individual's* job performance," not merely related to a group of individuals. For this reason, plaintiffs assert that Super Valu's business justification involving the

general attitude of Associated Grocers' ex-employees lacked the necessary link between the individual plaintiffs and their expected job performance.

■ A business justification proffered by an employer "'must have a manifest relationship to the employment in question.'" *Watson,* 487 U.S. at 997, 108 S.Ct. at 2790 (quoting *Griggs v. Duke Power Co.,* 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971)). The touchstone of the disparate impact inquiry is business necessity. *Griggs,* 401 U.S. at 431, 91 S.Ct. at 853; *Lasso v. Woodmen of World Life Ins. Co.,* 741 F.2d 1241, 1245 (10th Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2320, 85 L.Ed.2d 839 (1985). We do not believe, however, that a proffered business justification must be tailored to an individual applicant, as long as the employment practice is related to job performance. Employment decisions are often based upon broad objective criteria rather than subjectively based upon each individual's characteristics. In a disparate impact claim, the plaintiffs are necessarily challenging the effect of the employer's facially neutral practices on a protected *group* of people. Consequently, the business justification for the practice may likewise be group wide in scope.

We do not believe, as asserted by plaintiffs, that Super Valu's group-wide business justification contradicts the notion that discrimination laws were enacted for "the protection of the individual employee." *Connecticut v. Teal,* 457 U.S. 440, 453, 102 S.Ct. 2525, 2534, 73 L.Ed.2d 130 (1982). Super

---

**8.** Plaintiffs argue the Civil Rights Act of 1991 alters the disparate impact law under *Wards Cove* by imposing a heavier burden on the employer. We will not address the retroactivity of the 1991 Civil Rights Act as it is not apparent that the 1991 Civil Rights Act would alter the result of this case. *See Murphy v. Derwinski,* 990 F.2d 540, 544 n. 11 (10th Cir.1993) (declining to address the retroactivity of the 1991 Civil Rights Act as it affects *Wards Cove* because the outcome of the trial would be unaffected). We further note that in this case, the retroactivity issue would necessarily be preceded by a determination of whether the 1991 Civil Rights Act applies to the ADEA, an issue not raised by plaintiffs, and that such a determination would be placed precariously on top of the assumption already made concerning the applicability of disparate impact theory to the ADEA.

**9.** Jury instruction 16 informs a jury that if a plaintiff proves the elements necessary for a prima facie case, it "must find in favor of the plaintiff, unless [it] find[s] that defendant's employment policy was a business necessity." Jury instruction 17 then defines "business necessity," in relevant part, as follows:

> A "business" necessity is a policy or practice which is job related and of great importance to the performance of the job at issue. It must serve in a significant way the legitimate employment goals of the employer. However, there is no requirement that the challenged practice be essential or indispensable to the employer's business.

Valu was given the opportunity to explain why the plaintiffs were not hired and its employment practice was required to "serve[ ], in a significant way, [its] legitimate employment goals." *Wards Cove*, 490 U.S. at 659, 109 S.Ct. at 2125. Each plaintiff could, of course, argue that the employer's broad concerns were irrational, insubstantial, or secretly motivated by discrimination, but "it is the province of the fact finder to determine what inferences should fairly be drawn from the facts." *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1320–21 (10th Cir.1992). Moreover, the plaintiffs could have also prevailed by persuading the jury that alternative business practices were available which would be equally effective in achieving Super Valu's legitimate business concerns but without the undesirable discriminatory impact. *Wards Cove*, 490 U.S. at 660–61, 109 S.Ct. at 2126–27.

### 2). *Statistical Analysis*

Plaintiffs next contend the jury was improperly instructed regarding the appropriate composition of the applicant pool for statistical analysis. The conflict arises because the plaintiffs' expert examined the applicants for the warehousemen positions and found age to be a statistically significant factor in hiring. Super Valu's expert, in contrast, reviewed the applications for warehousemen and driver positions and found no statistically significant relationship between age and hiring. The validity of the statistics employed by the two experts is not in question, instead, the focus is on whether the correct population for statistical analysis includes only warehousemen, or both warehousemen and drivers.

■ The proper statistical comparison in disparate impact cases is between the age composition of the at-issue jobs and the age composition of the qualified persons in the labor market. *Wards Cove*, 490 U.S. at 650–51, 109 S.Ct. at 2121–22. Plaintiffs apparently believe the at-issue jobs in this dispute

should, by law, be limited to the warehousemen position. The district court, however, instructed the jury to make the at-issue job determination. Instruction number 18 stated in relevant part:

> If you find that the application and hiring procedures, qualifications, and duties for warehousemen and drivers during the relevant hiring period were substantially similar, then the "at-issue" jobs include both warehousemen and drivers.

> If you find that the application and hiring procedures, qualifications, and duties for the two jobs were not substantially similar, then the "at-issue" jobs are those of warehousemen only.

To resolve the issue raised by the plaintiffs, we must first decide whether the at-issue jobs determination is a question of fact or law.

■ The at-issue job determination requires a detailed examination of the circumstances which distinguish one job from the next. Such a case-specific inquiry necessarily involves weighing and interpreting the evidence presented. Since we find the at-issue job determination to be a question of fact, it is best suited for the trier of fact. *See* 29 U.S.C.A. § 626(c)(2) ("a person shall be entitled to a trial by jury of any issue of fact").[10] Therefore, it was appropriate for the jury in this case to make the at-issue job determination.

We next examine the appropriate law with which to instruct the jury. The plaintiffs, relying upon *Wards Cove*, assert the jury instructions incorrectly allowed the jury to compare warehousemen and drivers on the basis of application and hiring procedures.

As we noted in *Ortega*, "it is difficult to determine exactly how *Wards Cove* applies to different factual patterns." *Ortega*, 943 F.2d at 1245. Although the parameters defining the at-issue job determination were not articulated in *Wards Cove*, the Supreme Court held the proper comparison should be between the racial composition of the at-issue

---

**10.** Under Fed.R.Evid. 104(b), if the relevancy of proffered evidence is conditional upon a preliminary fact, the evidence should be admitted to the jury after the judge makes a preliminary determination that the foundational evidence is sufficient to support the jury's finding that the condition was fulfilled. In the present case, the relevancy of each party's statistical analysis was conditional upon the at-issue job determination.

jobs and the pool of qualified job applicants. *Wards Cove,* 490 U.S. at 650–51, 109 S.Ct. at 2121–22. Even though *Wards Cove* does not provide much guidance in making the at-issue jobs determination, it is clear that the level of skill required for a position is important in determining the qualified applicant pool.[11] Contrary to plaintiffs' assertion, *Wards Cove* does not address the applicability of application and hiring procedures in making the at-issue jobs determination.

Similarly, *Ortega* discusses at-issue jobs but provides little guidance in defining its application. The *Ortega* court did not expressly decide the at-issue job question, but it did state that if a broad at-issue job pool was used in the disparate impact analysis, it was imperative that the qualified applicants for these positions go through an identical application process. *Ortega,* 943 F.2d at 1245.

In defining the scope of at-issue jobs, we note two competing concerns. First, if diverse positions within an employer's work force are incorporated into the statistical analysis, then a valid, disparate impact claim could be diluted to insignificance by the hiring of protected groups in unrelated job positions. Such a result is clearly impermissible. In *Teal,* 457 U.S. at 455, 102 S.Ct. at 2535, the Supreme Court said "Title VII does not permit the victim of a facially discriminatory policy to be told that he has not been wronged because other persons of his or her race or sex were hired." We find that answer no more satisfactory when it is given to victims of a policy that is facially neutral, but effectively discriminatory. Second, plaintiffs should not be allowed to subdivide a work force into numerous subcategories in order to reduce the population size and find a statistically significant disparate impact.[12]

In order to best minimize these competing concerns, at-issue jobs should be substantially similar with respect to qualifications, duties and required skills. Similarity in application and hiring procedures may also be relevant, especially when the challenged business practice is a component of the employer's hiring policy. Resolution of the at-issue job question, however, depends upon the facts and circumstances of each case and the nature of the plaintiffs' claim; therefore, other factors may also be relevant in making this determination.[13] In the present case, the jury was instructed to examine the similarity in the "application and hiring procedures, qualifications, and duties for warehousemen and drivers." Because the instruction defined at-issue jobs utilizing criteria which encompassed the concerns set forth above, we do not find the jury instruction erroneous.

Plaintiffs also raise a number of factual issues regarding the pooling of warehousemen and drivers which we construe as a claim of insufficient evidence. Sufficient evidence exists if a reasonable mind might find the relevant evidence adequate to support the conclusion. *Garcia v. Director, Office of Workers' Comp. Programs,* 869 F.2d 1413, 1415 (10th Cir.1989). The evidence,

---

11. The Supreme Court stated:

> [W]ith respect to the skilled noncannery jobs at issue here, the [non-skilled] cannery work force in no way reflected "the pool of *qualified* job applicants" or the "*qualified* population in the labor force." Measuring alleged discrimination in the selection of accountants, managers, boat captains, electricians, doctors and engineers—and the long list of other "skilled" noncannery positions ... —by comparing ... the number of nonwhites filling cannery worker positions is nonsensical.
>
> *Wards Cove,* 490 U.S. at 651, 109 S.Ct. at 2122.

12. In determining the at-issue jobs, we note that the challenged employment policy must be applied equally to the different job categories in question. For example, if Super Valu's policy of

not hiring Associated Grocers' ex-employees was applied to applicants for warehousemen positions but not drivers, then it would be nonsensical to include drivers in the statistical analysis. The purpose of conducting the statistical analysis is to determine whether the employment policy had a disparate impact and therefore, to include a job category in the at-issue jobs which was unaffected by the employment policy would skew the result. In this case, the record indicates Super Valu's employment policy of not hiring Associated Grocers' ex-employees was applied to drivers as well as warehousemen.

13. For example, in *Wards Cove,* the at-issue jobs were the skilled noncannery positions which encompassed a broad array of different jobs. *Wards Cove,* 490 U.S. at 651, 109 S.Ct. at 2121.

however, must be " 'more than a mere scintilla.' " *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

■■■ We find the following facts sufficient to support the jury's verdict. There was testimony that drivers and warehousemen worked together as an integrated unit. Warehouse and transportation employees were a single bargaining unit under labor contracts for distribution personnel. There was also apparently some overlap in job skills, transfers between the two positions took place, and there were similarities in the hiring procedures. Although we recognize that drivers required somewhat different qualifications than warehousemen and this resulted in some differences in the application procedures, we believe Super Valu presented sufficient evidence to support the jury's verdict.

Plaintiffs next claim that under *Teal,* the instructions erred by not informing the jury that an employer's use of "bottom line" statistics does *not* provide a defense to a disparate impact case. Plaintiffs' reliance upon *Teal* is out of context and inapplicable.

In *Teal,* 457 U.S. at 442–44, 102 S.Ct. at 2528–29, an examination required by the employer to obtain supervisor status had a disparate impact on Afro–American applicants because a greater percent of white applicants passed the exam. The employer raised a "bottom line" defense arguing that overall, a greater percent of Afro–American test participants were ultimately promoted than were white participants. In finding the employer's defense inadequate, the Supreme Court said that "disparate impact should [not] be measured only at the bottom line ... [because] Title VII guarantees ... the *opportunity* to compete equally ... on the basis of job-related criteria." *Id.* at 451, 102 S.Ct. at 2533. In other words, even if Super Valu could show that the percentage of selected applicants who were over forty was not significantly less than the percentage of qualified applicants who were over forty, plaintiffs

would still have a case under the ADEA, if they could prove that some particular hiring practice had a disparate impact on persons over forty, notwithstanding the bottom-line age balance in Super Valu's work force. *Wards Cove,* 490 U.S. at 653 n. 8, 109 S.Ct. at 2123 n. 8.

Plaintiffs failed to prove Super Valu's hiring policy resulted in a disparate impact on persons over forty. Instead, plaintiffs attempted to demonstrate a disparate impact claim by presenting statistical evidence based upon one segment of the work force and Super Valu countered with statistical evidence based on a broader segment of the work force. Super Valu's statistical data was not an unacceptable bottom line defense as in *Teal,* but instead refuted the statistics which the plaintiffs relied upon in trying to establish their prima facie case.

■■■ Plaintiffs next allege the instructions "failed to inform the jury that statistics showing a substantial disparity between the number of people hired under forty and the number of people over forty proved disparate impact discrimination." Plaintiffs' assertion represents an incorrect statement of the law. The proper comparison in a disparate impact case is between the age composition of the at-issue jobs and the age composition of the qualified persons in the relevant labor market. *Wards Cove,* 490 U.S. at 650, 109 S.Ct. at 2121. The jury instructions set forth the proper law in this respect.[14]

■■■ Plaintiffs' final contention involving statistical analysis under the disparate impact theory is that the jury instructions "failed to give the jury guidance as to the correct legal standard for evaluating the statistics presented." Courts generally judge the significance of statistical evidence on a case-by-case basis and such an "approach properly reflects our recognition that statistics 'come in infinite variety and ... their usefulness depends on all of the surrounding facts and circumstances.' " *Watson,* 487 U.S. at 996 n. 3, 108 S.Ct. at 2790 n. 3 (quoting

---

**14.** Instruction 16 clearly states that the "plaintiffs need only prove that the [employment] policy had a discriminatory effect." Instruction 18 sets forth the proper law for statistical compari-

sons: "[t]he proper comparison for statistical analysis is between the age composition of the at-issue jobs and the age composition of the people who applied for the at-issue jobs."

*Teamsters,* 431 U.S. at 340, 97 S.Ct. at 1856–57); *Ortega,* 943 F.2d at 1243 n. 27. For this reason, courts are hesitant to adopt a rigid definition of the statistical significance necessary to allege a prima facie case of disparate impact. *See Watson,* 487 U.S. at 996 n. 3, 108 S.Ct. at 2790 n. 3.

The trial court did not err by failing to instruct the jury on how to evaluate the statistical evidence presented. First, we note there is no suitable jury instruction which has wide ranging applicability. Second, there were no circumstances present in this case which would necessitate more specific guidance because the appropriate standard for statistical significance was not contested by either party. Instead, the pivotal question facing the jury was the at-issue job determination.

### C. Jury Instructions as a Whole

■ Plaintiffs final attack on the jury instructions is that the instructions as a whole were misleading, overly technical, and confusing. Plaintiffs base this claim in substantial part upon the fact the instructions used technical terms of art such as "disparate impact," "disparate treatment," "business necessity," and "substantial impact."

This court has previously advised trial courts to avoid confusing the jury with overly technical terms which are only meaningful to those with a legal education. *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 468 n. 1 (10th Cir.), *cert. denied,* 498 U.S. 898, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990). The trial court did not commit such an error in this case. The phrases "disparate impact," "disparate treatment," and "business necessity" were not used solely as terms of art, but were carefully defined in layman's terms. We reviewed the instructions as a whole and do not find them misleading or confusing.

### II. Evidentiary Rulings

■ The evidentiary rulings of a trial court are reviewed for an abuse of discretion.

*Durtsche v. American Colloid Co.,* 958 F.2d 1007, 1011 (10th Cir.1992). Under this deferential standard of review, a trial court will be reversed only if we have a firm and definite belief that the trial court made a clear error in judgment. *Gilbert v. Cosco Inc.,* 989 F.2d 399, 402 (10th Cir.1993).

### A. Super Valu's Business Justifications.

■ Plaintiffs allege they were not hired in part because of their union affiliation and Super Valu "should not be allowed to escape liability through the articulation of an illegal action under one federal statute [National Labor Relations Act] in defense of claims brought under another federal statute [ADEA]."

In general, the record does not support the plaintiffs' claim. Super Valu contends it did not hire Associated Grocers' ex-employees because of poor morale, incidents of vandalism and sabotage, and animus towards Super Valu. These are legitimate business justifications. Although some of the evidence admitted to demonstrate the animosity Associated Grocers' employees displayed towards Super Valu took place during lawful union activity, the relevancy of the evidence was not based upon the union activity per se. Instead, Super Valu's concerns were derived from the conduct of Associated Grocers' ex-employees which, at times, took place in the context of union activity. For example, testimony regarding union picket lines focused on statements shouted by participants at Super Valu and picket signs blaming Super Valu for lost jobs.[15] The trial court instructed the jury that picket line activity was acceptable and further stated that any evidence pertaining merely to legitimate, legal union activities was irrelevant. We hold it was proper for the district court to admit evidence reflecting these legitimate business concerns.

■ Even if we assume, arguendo, that Super Valu chose not to hire some individuals because they were union members, such a decision is not actionable under the ADEA.[16]

---

**15.** One witness testified that there were signs held in the picket line that said Associated Grocers was "being screwed" by Super Valu. Witnesses also testified that people in the picket line

were yelling that Super Valu was unfair and cost them their jobs.

**16.** The claim appears even more questionable in view of the fact that Super Valu employees were

The ADEA protects individuals from age discrimination, it does not protect individuals from other forms of alleged employer misconduct. In *Flasher*, 986 F.2d at 1316, this circuit reached a similar conclusion regarding Title VII by holding that an employer's "burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination." The term "nondiscriminatory," however, "refer[s] only to the classes of people protected by Title VII ... [and] [d]iscrimination based upon other characteristics or factors is not prohibited by Title VII." *Id.* at 1316 n. 4. Thus, the defendant is only required "to articulate a reason ... that is not, on its face, prohibited by Title VII." *Id.* We believe the ADEA, like "Title VII[,] does not compel every employer to have a good reason for its deeds; it is not a civil service statute." *Id.* at 1321 (quoting *Benzies v. Illinois Dep't of Mental Health & Developmental Disabilities*, 810 F.2d 146, 148 (7th Cir.), *cert. denied*, 483 U.S. 1006, 107 S.Ct. 3231, 97 L.Ed.2d 737 (1987)). Instead, the ADEA only makes it unlawful to discriminate against an individual based on age. 29 U.S.C.A. § 623(a) (West 1985); *see Biggins*, —— U.S. at ——, 113 S.Ct. at 1707 ("it cannot be true that an employer who fires an older black worker because the worker is black thereby violates the ADEA. The employee's race is an improper reason, but it is improper under Title VII, not the ADEA"). Therefore, even if Super Valu's business justification was in fact unlawful under a different statute than the ADEA, Super Valu satisfied its burden of production under *McDonnell Douglas* by rebutting the inference that it acted out of discriminatory animus. *See Flasher*, 986 F.2d at 1317 n. 5.

Plaintiffs also argue that Super Valu made only "vague, general averments or claims ... [of] good faith" in offering legitimate business reasons for failing to hire the plaintiffs. ▇ An employer satisfies the burden of production by presenting its reasons for not hiring the plaintiffs with sufficient specificity to allow the plaintiff to demonstrate pretext. *Pitre v. Western Elec. Co.*, 843 F.2d 1262, 1265–66 (10th Cir.1988). We believe Super Valu satisfied this burden. For example,

Super Valu called witnesses who testified to the following conduct at the Associated Grocers warehouse: assorted acts of vandalism, foodstuff purposely damaged or destroyed, company vehicles sabotaged, poor morale, low productivity, bad attitude, expletives directed at Super Valu, and various other examples of anger directed towards Super Valu. Such evidence is more than a mere general assertion of good faith and was "specific enough to provide the plaintiff[s] with 'a full and fair opportunity to demonstrate pretext.'" *Id.* at 1266 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095).

Plaintiffs' final contention regarding admission of Super Valu's business justification evidence is the court committed reversible error by admitting hearsay and double hearsay evidence.

▇ The business justifications offered by an employer must be "admissible evidence," *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094, and hearsay is generally not admissible under Fed.R.Evid. 803. Statements offered for the effect on the listener, however, are generally not hearsay. *United States v. Lambinus*, 747 F.2d 592, 597 (10th Cir.1984), *cert. denied*, 471 U.S. 1067, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985).

▇ After careful review of the record, it is apparent the majority of business justification evidence presented by Super Valu was nonhearsay testimony regarding direct knowledge of vandalism, food product damage, low morale, and animus towards Super Valu. In some instances, the trial court permitted testimony concerning an out-of-court statement, but the testimony was offered to establish Super Valu's state of mind in making its hiring decisions and was not offered for the truth of the matter asserted. For example, the personnel manager for Super Valu testified that he had removed Associated Grocers' ex-employee applications from consideration because he heard about vandalism and low morale among those individuals. Although this testimony incorporates out-of-court statements, it was expressly presented to demonstrate Super Valu's state of mind in

required to join the same union which handled Associated Grocers' employees.

not hiring Associated Grocers' ex-employees, and was not offered to prove the truth of the matter overheard. Moreover, the trial court repeatedly instructed the jury as to the limited purpose of the testimony.

Plaintiffs challenge the clarity of the trial court's instructions regarding the "state of mind" evidence. Since plaintiffs did not raise the objection at trial, we review for plain error. *Denison*, 941 F.2d at 1422. The district court informed the jury on numerous occasions that testimony involving out-of-court statements was not offered to prove the truth of the matter asserted, but instead, was offered to show Super Valu's state of mind in making its employment decisions. Although not every instruction was ideally worded, we find no plain error.

### B. Exclusion of Plaintiffs' Rebuttal Exhibits.

Plaintiffs allege the trial court erred when it refused to admit into evidence job applications from some of the individuals hired by Super Valu. Plaintiffs sought introduction of the applications to rebut Super Valu's assertion that some of the plaintiffs were not as qualified as the individuals hired. The trial court refused to admit the exhibits on the basis of unfair surprise to the defendant.

■■■ We review a trial court's determination to exclude exhibits due to unfair surprise for an abuse of discretion. *Moss v. Feldmeyer*, 979 F.2d 1454, 1458–59 (10th Cir. 1992). In this instance, the plaintiffs failed to mark the applications as exhibits and thus defense was unprepared for their use. It was within the court's discretion to order the attorneys to establish a list of exhibits prior to trial so there would be no surprises. The trial court expressly noted that if evidence came out at trial which caught plaintiffs unaware, then plaintiffs would be allowed to rebut the evidence with evidence which was not previously marked as an exhibit. The plaintiffs were not caught unaware in this instance and the trial court noted "this is something you've known [about] for months." Furthermore, Super Valu stipulated to three such job applications so the admission into evidence of additional applications would have been merely cumulative. Clearly, the trial court did not abuse its discretion.

■■■ Finally, plaintiffs allege the trial court erred by excluding a letter from defense counsel to the EEOC. Plaintiffs used the letter in an attempt to refresh a witness' recollection concerning whether Super Valu had hired any Associated Grocers' ex-employees.

The record is incomplete as to this issue. First, it is impossible to glean from the record the contents of the letter as the record does not contain either the letter or a detailed discussion of the letter's contents. Second, the record does not indicate that plaintiffs ever attempted to have the exhibit admitted into evidence. During a bench conference, counsel for the plaintiffs informed the judge that she "may offer this [exhibit], if it doesn't refresh [the witness'] recollection." Whether plaintiffs' counsel would have sought to admit the letter into evidence cannot be determined from the record because the trial court deemed it inadmissible during the bench conference. The court was apparently concerned that defense counsel might be called to the stand to explain the letter. In any event, assuming the letter was actually excluded from evidence, we fail to see from the record how the court's decision was an abuse of discretion or how the plaintiffs suffered any harm. *See Gilbert*, 989 F.2d at 405 (a trial court's decision to exclude evidence is generally not overturned absent manifest injustice) (citing *Thweatt v. Ontko*, 814 F.2d 1466, 1470 (10th Cir.1987)). In reaching our conclusion, we specifically note that (1) the witness was allowed to read from the letter to refresh his memory; and (2) evidence concerning Super Valu's hiring of some Associated Grocers' ex-employees already existed in the record in the form of testimony.

We **AFFIRM** the jury's verdict.