Frank LUJAN, et al.,
Plaintiffs-Appellants,

v.

Harry N. WALTERS, Administrator of
the Veterans Administration,
Defendant-Appellee.

No. 85–1147.

United States Court of Appeals,
Tenth Circuit.

March 2, 1987.

Joseph F. Henderson, Staff Counsel (Mark D. Roth, General Counsel, with him on the brief), American Federation of Government Employees, AFL–CIO, for plaintiffs-appellants.

Kathleen A. Miller, Sp. Asst. U.S. Atty. (William L. Lutz, U.S. Atty., and Jennifer A. Salisbury, Asst. U.S. Atty., with her on the brief), for defendant-appellee.

Before HOLLOWAY, Chief Judge, and BARRETT and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

This is an appeal from a judgment in favor of the defendant, Harry N. Walters, Administrator of the Veterans Administration (VA), following a three day trial to the court of two consolidated cases involving alleged employment discrimination. Plaintiffs-appellants, Frank Lujan, Ramon Palacio, Montgomery Watts, J.W. Gober, Victor Smith and Jerry Zalman alleged, in the one action, that the VA had violated § 15 of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 633a, in promoting Freddie Martinez, then age twenty-seven, to the position of Warehouseman Foreman in September, 1979. ADEA prohibits discrimination based on age in all personnel actions affecting employees or applicants for employment in units of the Federal Government involving those who are at least forty years of age. 29 U.S.C. § 633a(a). The plaintiffs-appellants were ages forty-seven through fifty-four at the date of the promotion. Plaintiff-appellant, Jerry Zalman, in a separate action, alleged reprisal by the VA in the form of a lowered performance evaluation following his charge of VA discrimination in the aforesaid promotion.

The district court rendered findings of fact and conclusions of law and entered judgment on November 26, 1984. The court found that the selection of Freddie Martinez was made for legitimate, non-discriminatory reasons and that the claim of reprisal lodged by Jerry Zalman was not established.

A recitation of facts necessary for our decision follows. The six plaintiffs-appellants who applied for the position of Warehouseman Foreman, WS–4, at the VA Medical Center, Albuquerque, New Mexico, had considerably more warehousing and supervisory warehousing experience than did the selectee, Freddie Martinez. The selection process included a form which each applicant completed entitled Supplemental Experience Statement for Inservice Placement, designed to identify related work experience and skills acquired. At the time of the applications, Mr. Robert Matson, then age sixty-four, served as Chief of the VA Supply Service. He made the ultimate selection from the top five rated applicants. Mr. John Walters, then age fifty-four, served as Assistant Chief of Supply. Both Matson and Walters were well acquainted with the plaintiffs and the selectee, Freddie Martinez, in their working capacities.

The scores awarded the applicants by their respective supervisors were considered, together with the supplemental form above, by a rating panel consisting of Mr. Walters and Mr. Frank Cervantes, then Chief of Personal Property Management, Supply Service. Mr. Cervantes died prior to trial. The rating panel was assisted by Ms. Kathleen Catanach, Staffing Assistant of the Personnel Service. Under a formula, the two scores were totaled and the top five applicants were referred to the selecting official, Mr. Matson.

The supplemental application-form posed a number of questions under four elements, which included: Element 1, Ability to Do the Work of the Position Without More Than Normal Supervision; Element 75B, Ability to Interpret and Process Supply Documents; Element 25 E, Technical Knowledge of Warehousing Procedures;

and Element 86, Safety and Dexterity. Each element was rated on a scale of 0 to 4 points. The panel used the VA rating guide in evaluating the answers. The rating guide governing Element 86 reads as follows:

ELEMENT 86. <u>SAFETY AND DEXTERITY</u>. This element is defined as the ability to work in warehousing activities, avoiding injury to self and others by following safety rules and regulations. In determining proper rating for this element consider:

a. Type and frequency of exposure to hazardous working conditions.

b. Knowledge of safety rules and regulations.

c. Fast work record.

POINT VALUE

A. Applicants who have maintained a safe work record while working in positions which involve frequent and/or prolonged exposure to hazardous working conditions should be credited at this level. Examples of such conditions include working near moving materials and material handling equipment, danger of loads or equipment overturning, climbing on ladders, falling boxes or equipment, opening boxes and equipment items where cuts and bruises could be sustained. A safe work record of at least the past five years without lost time accidents would be required for credit at this level ....................... 4

B. Applicants who have maintained a safe work record while working in positions which involve no more than normal industrial hazards. Examples would be strains from loading and unloading materials and equipment; exposure to preservative oils in handling material, etc. No lost time within the past five years due to accident ................................. 3

C. Applicants who have maintained a safe work record while working in positions relatively free of potential hazards due to nature of work. Must maintain a safe work record over a period of five years or during last period of employment to be credited at this level ......................................... 2

D. Applicants whose work record over the past five years or during last period of employment evidences no lost time, but shows frequent minor accidents or a major accident. ................................. 1

(R., Vol. II, Defendant's Exh. J.)

The score accorded Mr. Martinez by Mr. Walters and Mr. Cervantes is the focal issue in this age discrimination case. Question No. 1 under Element 86, was: During the past five years have you had an accident while on duty that resulted in a loss of time from your job? Mr. Martinez wrote in explanation:

"In all my years of working for the U.S. Government, I was sent home for one day by Physician on duty, because while loading furniture on the warehouse truck, a desk slipped off the dolly and fell on my foot. Since I had my safety shoes on, I only experienced a swallowing [sic] of my foot."

(R., Vol. II, Exh. I.)

Thus, it was established, by Mr. Martinez's response, that he had lost some time by virtue of an on-the-job accident. The panel, however, gave Mr. Martinez a rating

of 4.0 on Element 86. While the panel took steps to keep the applications anonymous, as did Ms. Catanach, the trial court found that Mr. Walters was still able to identify Mr. Martinez from the information provided. Although the object was for the panel to evaluate on a "blind" basis, Mr. Walters stated that because of his knowledge and acquaintance with personnel in the warehouse over the years, he knew "to a degree" who the applicant was by virtue anonymous application. (R., Transcript Vol. III, pp. 410–16.)

Appellants contend that the clear, explicit language in the aforesaid Element 86 rating guide prohibits the allocation of a score of 3 or 4 if the applicant reveals, as did Mr. Martinez, that he lost work time due to an on-duty accident. Notwithstanding, the panel did award Mr. Martinez the top score of 4.0 for Element 86. Appellants state that "the significance of this error is simply that it alone allowed the young and inexperienced Martinez to even compete with the senior veteran warehouseman." (Brief of Appellant, p. 15.) It is uncontroverted that had the panel allocated a score less than 3.5 to Mr. Martinez on Element 86, he would not have accumulated a sufficient total raw score to have been among the top five candidates to make the final Promotion Certificate.

Mr. Walters was thoroughly examined and cross-examined with regard to the Element 86 rating given to Mr. Martinez. He stated that he and Mr. Cervantes did not interpret the last sentence of either A or B under Element 86 to exclude a panel from awarding a 4.0 or a 3.0 rating because it contradicts the first sentence of each. (R., Transcript Vol. III, p. 418.) The first sentence of A reads "Applicants who have maintained a safe work record while working in positions which involve frequent and/or prolonged exposure to hazardous working conditions should be credited at this (4.0) level ..." and, "Applicants who have maintained a safe work record while working in positions which involve no more than normal industrial hazards." (Point 3.0.) (R. Vol. II, Defendant's Exh. J.)

Mr. Walters testified that he could not recall exactly why Mr. Martinez received the 4.0 rating under Element 86. However, he did testify that given the same response, he would then (at trial) probably rate Mr. Martinez at 3.5. The record reflects the following:

Q. Okay. Well, reading the question, says during the past five years have you had an accident while on duty that resulted in a loss of time from your job. If so, explain. And assuming if she (Ms. Catanach) read you an answer: In all my years of working for the U.S. Government, I was sent home for one day by physician on duty because, while loading furniture on the warehouse truck, a desk slipped off the dolly and fell on my foot. Since I have my safety shoes on, I only experienced a swelling of the foot, is what it says. Now, drawing your attention to the factors on element # 86 contained in Defendant's Exhibit J, how would you rate that answer?

A. Well, you know, I think we covered this a couple times in the EEO. Again, I should probably rated it 3.5. I think it got rated as a 5. Again, Mr. Cervantez and I worked together on it. I could have rated it 3.4 and he could have rated it as a 4 and said, well it doesn't look severe. He had safety shoes on and so forth, and we could agree on a 4. I can't answer why it was a 4 other than a 3.5 other than that. When you are evaluating four elements for whatever many applications, ten, fifteen, it's very difficult to get it exact.

Q. Well, does not the rating factors state that the last sentence require that a safe work record of at least five—the past five years without lost time accidents would be required for credit at this level for a 4. And for three it says no lost time within the past five years due to accident. The last sentence? Isn't that correct?

A. Well, that contradicts the first sentence.

(R., Transcript Vol. III, pp. 417–18.)

Thereafter, Mr. Walters again testified that, based on Mr. Martinez's response to

Element 86, he would grade him at 3.5 because:

A. That's right. In #3 is a less hazardous job than 4 and a warehouseman would normally fit into a 4 and he had safety shoes on. It wasn't clarified whether it was a whole day, a half a day, a half-hour, an hour. It was that he was sent home. He didn't necessarily ask to go home or anything. I just—I would think a 3.5 would be a fair answer.

Q. Now a 3.5 representing a half-way point between a 3 and 4, isn't that true that the 4 requires no accidents within the last five years?

A. That's what it says, right.

Q. And a 3 requires no lost time within the last five years due to accident?

A. Right.

Q. And you still feel that it should get something between a 3 and 4, even though it represents lost time and an accident?

A. Yes.

Q. Now, isn't it a fact, true—

A. You know if you would rate things in that case if you was off three minutes for any kind of an accident you could get a zero if you wanted to go rate them that strictly. I think the intent of the value of points is how many safety hazards or problems that that employee has had. Just the half a day off or full day off or I wouldn't—

(*Id.* at pp. 420, 421.)

Appellants accurately point out that had Mr. Martinez received less than a 3.5 rating on Element #86, he would not have achieved a total raw score entitling his application to be considered among the top five finalists. From this, appellants argue that: the panel identified Mr. Martinez as the applicant who gave the above quoted response to Element #86; the panel intentionally inflated Mr. Martinez's scoring in violation of its "blind" rating policy and with knowledge of his age; and that the reasons given by Mr. Matson for Mr. Martinez's ultimate selection were pretextual. We disagree. In doing so, we do not condone the language used by the VA in relation to Element 86 of its rating guide. The

language contained in the last sentences under A and B cannot be harmonized with the balance of the language therein. However, the first sentences and recital of matters to be considered in determining a proper rating for safety and dexterity do indicate that the last sentences were not intended to apply in an absolute fashion.

Mr. Walters correctly testified that if a more lenient interpretation were not applied, any on-duty accident requiring lost time of even a few minutes could cause an otherwise qualified applicant to fail to achieve a total raw score entitling him for consideration as a finalist. The reasoning advanced by Mr. Walters seems sensible and logical. We observe that the appellants have retreated from their steadfast position advanced in their opening brief that Mr. Martinez could not have been rated higher than a 2.0. In their reply brief, they state:

Similarly, the instructions would exclude for this answer anything over a 3.0 (which itself would be generous, although perhaps defensable [sic]), as a score of 3 requires no lost time and a safe work record during the past five years. (Footnote omitted.)

(Appellants' Reply Brief, p. 4.)

Thus, if the "instructions" governing the rating under Element 86 would, in the case of Mr. Freddie Martinez, necessarily prevent him from earning a score higher than 3.0, it is apparent that appellants have retreated from the position that the last sentence under the B factor entitling a 3.0 rating does not control even though Mr. Martinez reported that he did have one on-the-job accident which resulted in some lost time for one day. The last sentence under B reads: "No lost time within the past five years due to accident."

In defense of the panel's position that the rating guide was not intended to apply technically, the VA points out that the elements on the rating guide are written in absolute terms and that if applied literally applicants with good safety records could not achieve a score higher than 1.0. As an example, the VA points out that technically only applicants who worked under frequent

or prolonged exposure to hazardous conditions could receive a rating of 4.0. Further, without an absolutely accident-free work record, no applicant could score above 1.0. The VA contends, however, that the rating guide permits some discretion, particularly in the evaluation of the applicants' "type and frequency of exposure to hazardous working conditions," "knowledge of safety rules and regulations," and "past work records." (Brief of Appellee, p. 17.) The VA states that the panel did not apply the rating guide in a technical fashion but that it was applied in a flexible but nondiscriminatory fashion to all candidates. We agree.

For example, appellant J.W. Gober stated on his supplemental form, under Element 86, that he had experienced two on-duty accidents within the past five years resulting in loss of time. One, involving pulled back muscles, resulted in a loss of four days. Another, involving a right knee injury sustained when jumping off a loading dock, resulted in loss of five weeks. (R., Vol. III, Defendant's Exh. G.) Notwithstanding, Mr. Gober was given a 2.0 rating by the panel. Mr. Gober was age forty-seven at the time he applied. A technical application of the rating guide would have resulted in a 0 rating in Mr. Gober's case. Appellant Jerry Zalman, age forty-nine at the time of the rating, was then working as a supply clerk which, according to Mr. Walters, was "strictly paper work at the desk as a general rule." (R., Transcript Vol. III, p. 442.) The rating guide under Element 86 technically would not have permitted a rating beyond 2.0 because the position was "relatively free of potential hazards due to the nature of the work." Even so, the panel accorded Mr. Zalman a 4.0 rating which, according to the criteria, can only be given if there is "frequent or prolonged exposure to hazardous working conditions." (R., Vol. II, Defendant's Exh. F.)

Appellants insist that because Mr. Walters knew of Mr. Martinez's application and of the significance of giving him a high score on Element 86, this established a pretext in the selection of Mr. Martinez over the appellants. (Reply Brief of Appellants, p. 7.) Strangely, appellants do not criticize the scores accorded them for Safety under Element 86 (2.0 for Mr. Gober and 4.0 for Mr. Zalman) even though, had the guide been strictly applied, these scores were too high. The appellants criticize the fact that the Martinez application was not "blind"; however, they withhold the same criticism in relation to the scores accorded the applications of Mr. Gober and Mr. Zalman. The appellants state:

Second, the observations regarding Mr. Gober's score of 2.0 for safety (Element 86) and Mr. Zalman's score of 4.0 for safety misses the point. Mr. Gober's response revealed two accidents and lost time, thus a 2.0 was entirely appropriate and indicates that the panel knew how to properly interpret the instructions. In fact, Mr. Walters would have recognized those two accidents (which were described in factual detail) as belonging to his neighbor, the man who drove him to work each day, J.W. Gober. (Supp. Tr. Vol. III, p. 409.) At trial, Mr. Walters identified those same accidents with Mr. Gober. *Ibid.* Thus, on the panel, Mr. Walters had the complete knowledge of the accidents so as to evaluate the potential hazard and negligence of the acts, justifying a low score of 2.0.

The appellee's observation that Mr. Zalman's 4.0 for Element 86 was "over evaluated" since he only held the position of supply clerk in the warehouse ("strictly paperwork at the desk as a general rule," p. 19), is also revealing if indeed the same standard of evaluation is applied to all applicants. Again, the panel probably knew that the applicant, identified as the supply clerk, must be Mr. Zalman who had replaced the selectee as file clerk two years prior. Thus, the panel knew that this applicant had many years in the warehouse as a supervisor for the Air Force, and the 4.0 was justified. Interestingly, however, is the appellee's recognition that the job "is strictly paperwork" when the selectee, who held the same file clerk's position prior to his 2–year incumbancy [sic] as a warehouseman, is credited with the *five years* hazardous duty required for both a 3.0

and 4.0 by the rating guide instructions D–J. (Reply Brief of Appellants, pp. 5, 6.)

▮ Thus, it seems that appellants would apply a double standard. On the one hand, they condemn the Element 86 rating given Mr. Martinez because Mr. Walters knew that it was Martinez's application being rated. Appellants contend, in turn, that this demonstrates that the panel gave Mr. Martinez the 4.0 rating only because the panel wished to advance the younger Martinez to the warehouseman position over the more qualified and experienced older appellants. Appellants declare that, "there can be no doubt that the irregularities in the manipulation of the selectee's score on Element 86, coupled with the cover-up of the panel's knowledge of the author's identity and the significance of that knowledge, clearly establishes pretext in the selection of Mr. Martinez over the plaintiffs." (Reply Brief of Appellants, p. 7.) Appellants, however, do not criticize the panel's identity and knowledge of the applications submitted by Mr. Gober and Mr. Zalman. Furthermore, they do not fault the panel's flexible application of the rating guide under Element 86 in the cases of Mr. Gober and Mr. Zalman based upon Mr. Walters' personal knowledge of their work records. Under these circumstances, we hold that the failure of the review panel to apply the rating guides as technically as may be required under Element 86 is not evidence that a ruse was employed by the panel to advance Mr. Martinez over the appellants because of age. The rule of "liberality" in the application of the rating guides under Element 86 was applied by the panel without regard to age.

In *Perrell v. Financeamerica Corp.*, 726 F.2d 654, 656 (10th Cir.1984), we observed that in instructing in ADEA cases:

> The essence of the correct formulation of the standard of proof is that it requires the jury to focus on the effect of the factor of age. The jury must understand that it is not enough that age discrimination figure in the decision to demote or discharge; age must "make a difference" between termination and retention of the employee in the sense that, "but for" the factor of age discrimination, the employee would not have been adversely affected.

In *E.E.O.C. v. Prudential Federal Sav. and Loan Ass'n.*, 741 F.2d 1225, 1229–30 (10th Cir.1984), *rev'd and remanded on other grounds*, 469 U.S. 1154, 105 S.Ct. 896, 83 L.Ed.2d 913 (1985), we observed:

> In the instant case the jury was properly and thoroughly instructed that the E.E.O.C. had to prove that "the age of the employee in question was a determinative factor in defendant's decision to discharge him. That is ... but for his age, he would not have been so treated." Rec., vol. XV, at 1111. We conclude that the court's instructions accurately set out the relevant legal standards.

In the case at bar, the district court found that the plaintiffs-appellants had established a *prima facie* case of age discrimination, but that they had failed by a preponderance of the evidence to prove that the reasons articulated by the VA for the selection of Mr. Martinez were pretextual. We agree.

▮ The ultimate reasons given by Mr. Matson for the selection of Mr. Martinez and the rejection of the appellants were subjective in nature. This Court has upheld the use of subjective criteria under like circumstances. *See Colon-Sanchez v. Marsh*, 733 F.2d 78 (10th Cir.), *cert. denied*, 469 U.S. 855, 105 S.Ct. 181, 83 L.Ed.2d 115 (1984); *Verniero v. Air Force Academy Sch. Dist. No. 20*, 705 F.2d 388 (10th Cir. 1983); *Burrus v. United Telephone Co.*, 683 F.2d 339 (10th Cir.), *cert. denied* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982). To be sure, we have observed that the use of such subjective criteria as "dedicated" and "enthusiasm" may offer a convenient pretext for giving force and effect to prejudice, and can create a strong inference of employment discrimination if there is a showing of significant disparity in the representation of a particular group. *Mohammed v. Callaway*, 698 F.2d 395, 401 (10th Cir.1983). There is no showing of significant age disparity in employment practices in the instant case. The record

evidence does not support an inference of pretext. An employer "has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Texas Department of Community Affairs v. Burdiue,* 450 U.S. 248, 259, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981). There is no statistical or other evidence in the record tending to show that VA employees in the warehouse section, age forty or over, were discriminated against in employment practices. There is no showing of disparate impact.

In reviewing the judgment of the district court following trial to the court we review the questions of law *de novo* to ascertain whether proper legal standards were applied; challenges to factual determinations are reviewed under the "clearly erroneous" standard prescribed in Rule 52(a), Fed.R. Civ.P. *See Colon-Sanchez v. Marsh, supra.* We must give great deference to facts found by the district court, who alone was in a position to assess the demeanor of the witnesses. In *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), the Supreme Court addressed the "clearly erroneous" rule:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.

470 U.S. at 573–74, 105 S.Ct. at 1511–12.

We affirm the district court's judgment dismissing the appellants' age discrimination in employment complaint.

We turn now to the separate complaint of plaintiff-appellant Jerry Zalman against the VA. Zalman alleged that following the selection of Freddie Martinez as warehouseman foreman, the VA again discriminated against him (Zalman) in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* and the ADEA by retaliating "against Plaintiff by giving him an unduly low evaluation, which improper evaluation had the effect of denying Plaintiff another chance at a promotion." (R., Vol. I, p. 144.) Zalman sought damages, declaratory and injunctive relief, costs and attorneys fees. *Id.* at 145.

The record contains the testimony of various witnesses for the VA who testified that the plaintiffs-appellants herein, including Mr. Zalman, resented the VA selection of Mr. Martinez as warehouseman foreman and that, as a result, they displayed an uncooperative attitude and did not perform their duties adequately. Mr. Matson testified that the plaintiffs-appellants, including Mr. Zalman, engaged in a work slowdown following Mr. Martinez's selection and that the slowdown lasted at least a month. (R., Transcript Vol. III, pp. 468–71.) It was on January 7, 1980, during this slowdown period, that Mr. Martinez completed an appraisal of Mr. Zalman's work performance. It was substantially lower than his previous performance appraisal of July 31, 1979. The total score on the January 7, 1980, performance appraisal was 36 points compared to 61 points awarded on the July 31, 1979, appraisal.

■ While there is conflicting evidence relative to the work slowdown, we agree with the District Court's conclusion that Mr. Zalman "failed to prove by a preponderance of the evidence that the appraisal he received from Mr. Martinez on January 7, 1980, was in retaliation for his having engaged in protected activity." (R., Vol. I, p. 138.)

■ The three-part analysis set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 3 L.Ed.2d 668 (1973), applies in retaliation cases. *Romero v. Union Pacific R.R.,* 615 F.2d 1303, 1307 (10th Cir.1980). Under this analysis, the ultimate burden of persuasion remains with the plaintiff. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Although the district court did not specifically address the three-step analysis of *McDonnell Douglas, supra,* as to each stage in relation to the reprisal claim, the test was recognized in the

court's conclusions of law. The court, following a full trial on the merits, resolved the ultimate issue: Mr. Zalman failed to prove his retaliation claim by a preponderance of the evidence. This finding and conclusion, made following a full trial on the merits, is adequate. *See U.S. Postal Service Board of Governors v. Aiken,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

WE AFFIRM.