**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 25, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GEORGE WEBB,

      Plaintiff-Appellant,

v.

LEVEL 3 COMMUNICATIONS,
LLC,

      Defendant-Appellee.

No. 05-1051

(D.C. No. 03 MK 1995 (MJW))
(D. Colorado)

---

**ORDER AND JUDGMENT** *

---

Before **BRISCOE, HARTZ,** and **O'BRIEN** , Circuit Judges.

---

Plaintiff George Webb appeals the district court's order granting summary

judgment for defendant, Level 3 Communications, LLC (Level 3), on his claims

of age discrimination and retaliation in violation of the Age Discrimination in

Employment Act (ADEA), 29 U.S.C. § 621 et seq. We exercise jurisdiction

pursuant to 28 U.S.C. § 1291 and affirm.

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.

In 1997, at the age of fifty-five, Webb began working for a predecessor of Level 3 as a Senior Network Developer. Though he experienced some performance problems in 1998, overall Webb's performance met or exceeded expectations.

In 1999, Webb's supervisor inquired as to his willingness to relocate to Colorado. From the conversation, Webb inferred that moving to Colorado would help him advance within the company. Webb asked about a relocation package and believed that relocation expenses would be offered. During that conversation, however, his supervisor did not promise reimbursement and warned: "Don't do anything you can't get out of." App. at 176. Despite the warning, Webb and his wife put a deposit down on a home in Colorado. Early in 2000, Level 3 informed Webb that there was no money in the budget for relocation costs. Webb opted to proceed with the move, and in August 2000, he and his wife moved to Colorado.

In June 2001, Level 3 informed Webb that his position was being eliminated in a reduction in force (RIF) and that he would be terminated effective September 9, 2001. Webb began to think that Level 3 was treating him less favorably because of his age. Webb was saved from termination by Tim Leddy, Vice President of Customer Operations, who hired Webb as a Program Manager

2

in the Customer Operations Department. Webb considered this to be a lateral move. After the move, Level 3 did not provide Webb with plans for his future development, something, he contends, the company routinely provided to younger employees. Webb grew concerned that he "was being set up for the next RIF when it came." App. at 188.

On December 31, 2001, Webb's job title changed to Program Manager II. Between June 2001 and January 2003, Level 3 had several additional RIFs, but Webb survived them.

On November 14, 2002, Webb met with Blake Isom, a Level 3 Human Resources Department representative, for assistance in "finding opportunities that could better utilize [his] experience and expertise . . . " within the company. App. at 166. During their meeting, Isom asked Webb, "Have you ever been discriminated against?" Id. at 167. Webb responded, "[A] case could probably be made for it." Id. at 167, 188. Webb did not file a complaint under Level 3's anti-discrimination policy, and he did not request an investigation into his allegation of discrimination. Isom did not investigate Webb's statement.

In January 2003, Level 3 instituted another RIF for economic reasons. Leddy needed to reduce the number of employees within his division and selected Webb for termination based on customers, work, sales, and input received from his supervisor regarding his performance and ability to contribute to the

3

organization. During the RIF, Level 3 eliminated forty-nine employees: twenty-five were under the age of forty; and twenty-four were forty years old and over.

On January 16, 2003, Level 3 informed Webb that his position was being eliminated and that he was being terminated. Level 3 gave Webb the option of a severance package, which was offered to all impacted employees, or a modified retirement package. Level 3 gave Webb forty-five days to consider the two options. Webb applied for retirement benefits on April 8, 2003, but Level 3 denied his request because he did not apply for benefits within the forty-five day period.

After his termination, Webb applied for other positions with Level 3, for which he contends he was fully qualified. Webb never received an interview. On April 8, 2003, Webb filed a charge of discrimination with the EEOC. A few months later, Webb filed this action alleging discrimination and retaliation in violation of the ADEA. Level 3 filed a motion for summary judgment on both claims, which the district court granted. The district court found that the RIF was a legitimate nondiscriminatory reason for Webb's termination, and that Webb had failed to show that this reason was pretextual. As to Webb's retaliation claim, the district court held that Webb offered no evidence of a causal connection between the protected activity, Webb's conversation with Isom, and the adverse action, i.e., his termination.

4

II.

Webb argues that the district court erred in finding that Webb failed to present sufficient evidence of pretext to preclude summary judgment on his discrimination claim. He also contends the district court erred in finding that Webb did not produce sufficient evidence of a causal connection between the protected activity and his termination to set forth a prima facie case of retaliation.

*Standard of review*

This court reviews de novo a district court's grant or denial of summary judgment, applying the same standard as the district court. Alexander v. Oklahoma, 382 F.3d 1206, 1215 (10th Cir. 2004) (citation omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "We view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the nonmoving party." Combs v. PriceWaterhouse Coopers LLP, 382 F.3d 1196, 1199 (10th Cir. 2004) (citation omitted).

*Discrimination claim*

In this case, Webb presented no direct evidence of age discrimination and instead, relied on circumstantial evidence. When a plaintiff relies on

5

circumstantial evidence to demonstrate employment discrimination, we apply the burden-shifting framework set forth in McDonnell Douglas and its progeny. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-07 (1973); Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002) (McDonnell Douglas applies to ADEA and Title VII claims).

Under the McDonnell Douglas framework, a plaintiff establishes a prima facie case of age discrimination by showing that he or she was: 1) within a protected age group; 2) doing satisfactory work or qualified for the position; 3) discharged; and 4) replaced by a person outside the protected age group. Branson v. Price River Coal Co., 853 F.2d 768, 770 (10th Cir. 1988); EEOC v. Sperry Corp., 852 F.2d 503, 507 (10th Cir. 1988). In RIF cases, a plaintiff is not always replaced with another employee. Thus, courts have modified the fourth element so that a plaintiff may produce "evidence, circumstantial or direct, from which a fact finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." Branson, 853 F.2d at 771 (internal quotation marks and citation omitted). The fourth element may also be established through circumstantial evidence that a "plaintiff was treated less favorably than younger employees during the [RIF]." Id.

Once a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the

decision. Sperry, 852 F.2d at 507. If the defendant offers such evidence, "the presumption of discrimination established by the prima facie showing 'simply drops out of the picture.'" Ingels v. Thiokol Corp., 42 F.3d 616, 621 (10th Cir. 1994) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993)). A plaintiff must then offer evidence that age was a determining factor in the challenged decision, by either showing that the defendant's proffered reasons were a pretext for age discrimination or by producing direct evidence of age discrimination. Ingels, 42 F.3d at 621. A plaintiff "need not disprove defendant's reasons or demonstrate that age was the only factor motivating the decision, but [he or she] must show that age actually played a role in the employer's decisionmaking process and had a determinative influence on the decision." Jones v. Unisys Corp., 54 F.3d 624, 632 (10th Cir. 1995) (internal quotation marks, citation and bracket omitted). Evidence of pretext may include: "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating criteria); and the use of subjective criteria." Garrett, 305 F.3d at 1217 (internal quotation marks and citations omitted).

Level 3 does not dispute that Webb set forth a prima facie case of discrimination. Likewise, Webb does not contest the district court's finding that

7

Level 3 set forth a legitimate nondiscriminatory reason for terminating Webb. The parties, however, dispute whether Webb set forth sufficient evidence that Level 3's reason is a pretext for discrimination.

In RIF cases, a plaintiff can show pretext in three principal ways. Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1168 (10th Cir. 1998). While most plaintiffs' arguments fit within these three categories, we have not foreclosed other methods of demonstrating pretext. Id. at 1168 n. 6. First, a plaintiff can show that his or her termination does not accord with the criteria allegedly used to select those for the RIF. Id. at 1168. While this "evidence can in some cases suffice to substantiate pretext . . . minor inconsistencies in the application of RIF criteria may be too insubstantial to allow a reasonable jury to infer that the RIF was pretextual." Id. (citations omitted). Second, a plaintiff can produce evidence that his or her evaluation under the defendant's RIF criteria was deliberately falsified or manipulated to effect his or her termination. Id. (citation omitted). Evidence that a supervisor responsible for assessing performance displayed ageist animus is one way of demonstrating manipulation or falsification of an evaluation. Id. Third, a plaintiff can adduce evidence that the RIF was generally pretextual, i.e., that its goal was to eliminate older employees and replace them with new hires. Id. Statistical evidence may be relevant for this purpose. Id.

Webb argues that he presented sufficient evidence from which a jury could

8

have found that his inclusion in the January 2003 RIF was a pretext for age discrimination.

## a. Overall age of workforce

Webb argues that, overall, Level 3's workforce was "very young," and from this, he contends a jury may infer that Level 3 had a bias against older workers and discriminated against Webb on the basis of age. He bases this statement on his own observations and on a finding by this court in Abuan v. Level 3 Communications, Inc., that "[t]he workforce at Level 3 was primarily under forty." 353 F.3d 1158, 1165 (10th Cir. 2003).

Level 3's workforce is young. At the time of the January 2003 RIF, the company's workforce, including those affected by the RIF, consisted of 1,694 employees under forty years of age and 666 employees forty years old and over. This fact alone, however, is not evidence of pretext.

While "statistical data showing an employer's pattern of conduct toward a protected class can create an inference that an employer discriminated against individual members of the class," Fallis v. Kerr-McGee Corp., 944 F.2d 743, 746 (10th Cir. 1991) (citation omitted), we have cautioned against its usage. "Statistics taken in isolation are generally not probative of age discrimination." Jones, 54 F.3d at 632 (citation omitted). To create an inference of discrimination, statistical evidence "must show a significant disparity and eliminate

9

nondiscriminatory explanations for the disparity." Fallis, 944 F.2d at 746 (citation omitted). "In other words, a plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals." Id. (citation and emphasis omitted).

In this case, the fact that Level 3's workforce has a greater number of employees under the age of forty is not evidence of pretext. By considering the overall composition of Level 3's workforce, one effectively groups all employees regardless of specialty or skill, fails to compare similarly situated individuals, and fails to eliminate numerous nondiscriminatory reasons for the fact that Level 3's workforce is young. Accordingly, the overall age of Level 3's workforce, without more, is insufficient to raise a genuine issue of material fact as to pretext.

*b. Webb's beliefs as to his qualifications*

As further evidence of pretext, Webb contends he had more experience and was better qualified than other younger employees who received promotions and were not terminated in the RIF. Webb also argues that he performed his job well and received excellent performance evaluations. An employee's own opinions, however, about his or her qualifications do not establish a material factual dispute on the issue of pretext. Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1329 (10th Cir. 1999) (citation omitted);

10

see also Furr v. Seagate Tech., Inc., 82 F.3d 980, 988 (10th Cir. 1996) ("It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his [or her] own relative performance.") (citation omitted).

Webb offers the names of ten individuals whom he contends are younger and less experienced but received promotions. The record contains virtually no evidence as to the specific qualifications of each of these individuals, and the little evidence Webb presented was based on hearsay, vague generalities, and speculation. Webb also failed to identify, with any detail, when these alleged promotions occurred and how these prior incidents are connected to his termination in the January 2003 RIF. See Simms, 165 F.3d at 1330 (recognizing that prior incidences of alleged discrimination are not probative of pretext unless they can be connected to the employment action at issue).

*c. Other instances of alleged discrimination*

Webb argues that his failure to receive promotions and relocation expenses, as well as his inclusion in the June 2001 RIF, constitute evidence of pretext. This evidence is also insufficient to establish pretext.

Webb has failed to present any evidence connecting these prior incidences with Leddy's decision to include him in the January 2003 RIF. See Simms, 165 F.3d at 1330 (prior incidents are not "probative of pretext unless the prior

11

incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand") (citations omitted). While a plaintiff can connect prior incidences of discrimination by showing that the same supervisors were involved in the prior discriminatory employment actions, Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 856 (10th Cir. 2000) (citation omitted), Webb is unable to make such a showing. Between 1999 and 2003, Webb worked in two different departments and had numerous different supervisors. Though Leddy made the decision to terminate Webb, Leddy did not make the decision to deny him relocation benefits, deny him promotions, or include him in the June 2001 RIF. Rather, Leddy saved Webb from termination in June 2001 by giving him a position in the Customer Operations Department. There is nothing in the record to connect these alleged prior events to his 2003 termination.

The prior alleged incidences of discrimination are also too remote in time to be considered when determining whether the reasons given for Webb's 2003 RIF termination were pretexual. Discriminatory incidents which allegedly occurred "either several years before the contested action or anytime after are 'not sufficiently connected to the employment action in question to demonstrate pretext.'" Id. (quoting Simms, 165 F.3d at 1331 (holding that discriminatory event which took place three years before was too remote)). Here, Webb relocated to Colorado in August 2000. Before he relocated, Level 3 informed

Webb that relocation expenses were not available. Viewing the evidence in a light most favorable to Webb, the denial of relocation expenses occurred in August 2000 at the latest, nearly two and one-half years before his termination in January 2003. Likewise, the first RIF occurred in June 2001, over one and one-half years before his ultimate termination. These events are too remote in time to establish evidence of pretext. See Heno, 208 F.3d at 856; Simms, 165 F.3d at 1331. As to the alleged promotions of younger employees, the record is devoid of sufficient details to determine when the promotions of his peers occurred, and thus, we are unable to conclude that those instances are evidence of pretext.

Webb also contends that his failure to receive retirement benefits and his unsuccessful attempts to apply for other positions at Level 3 are evidence of pretext. These actions, however, occurred subsequent to his termination, and thus, are not sufficiently connected to his termination to demonstrate pretext. See id.

*d. Webb's meeting with human resources*

Webb argues that Level 3's failure to conduct an investigation into his statement regarding age discrimination is evidence of pretext. Webb testified, however, that he did not intend to raise allegations of discrimination during the meeting with human resources, did not expect Level 3 to conduct an investigation after the meeting, never filed a formal internal complaint regarding this

13

allegation, and never followed up on his allegation in any way.  This meeting, without more, is simply not evidence of discrimination.

### e.  January 2003 RIF

Webb contends that his inclusion in the RIF was pretextual because: 1) he did not fit within the criteria for layoff and was the only Program Manager selected for termination;[1] 2) Level 3 used subjective criteria; 3) Level 3 did not include younger employees in the layoff; and 4) Level 3 reassigned his duties to a younger employee.

Webb contends that Kevin O'Hara, President of Level 3, announced in a conference call that the selection criteria for the RIF were: performance, skills and qualifications, and tenure with the company.  Webb argues that Level 3 did not follow these criteria because a Human Resources representative, Rob Zwolfer, told him that his position simply had been eliminated.  Webb asserts that the elimination of his position contradicts the use of these criteria because "he had more seniority, more experience and superior contributions as compared to his peers."  Appellant Br. at 13; App. at 222.

---

[1]Factually, Webb's allegation is not entirely accurate.  Webb was one of seven individuals who held the position of Program Manager II.  Of the seven, four were under the age of forty, and three were over forty years of age.  Webb was the only Program Manager II to be eliminated.  Webb, however, has attempted to include Program Managers as comparables, but the two positions, Program Manager and Program Manager II, are different.

Webb's beliefs that he had more seniority, more experience, and superior contributions when compared to his peers is insufficient to prove pretext. See Simms, 165 F.3d at 1329 (an employee's own opinions about his or her qualifications do not give rise to a material factual dispute on the issue of pretext); Rea v. Martin Marietta Corp., 29 F.3d 1450, 1456 (10th Cir. 1994) ("Plaintiff's evidence of [his or] her satisfactory work performance is not probative because in a [RIF] case, someone has to be let go, . . . including satisfactory employees.") (internal quotation marks and citation omitted). Moreover, Webb has failed to provide any specific facts for this conclusory statement. There is virtually no evidence in the record, aside from vague generalities and speculation, as to the qualifications of Webb's peers.

As to Webb's allegation of subjective decisionmaking, generally courts view subjective evaluation methods with skepticism. Garrett, 305 F.3d at 1218 (citations omitted). However, "the use of subjective criteria does not suffice to prove intentional discrimination." Doan v. Seagate Tech., Inc., 82 F.3d 974, 978 (10th Cir. 1996) (citation omitted); see also Bauer v. Bailar, 647 F.2d 1037, 1046 (10th Cir. 1981) ("Subjective considerations are not unlawful per se. . . . An employer has discretion to choose among equally qualified candidates, provided that the decision is not based upon unlawful criteria.") (internal quotation marks and citation omitted). "[W]e typically infer pretext . . . only when the criteria on

which the employers ultimately rely are entirely subjective in nature." Jones v. Barnhart, 349 F.3d 1260, 1267-68 (10th Cir. 2003) (citations omitted).

While Level 3's criteria involved some subjective considerations, Webb has not shown that Leddy's decision was based entirely upon subjective criteria. Rather, the evidence indicates that Leddy considered both objective and subjective criteria. Leddy had to reduce the head count within his division and made the ultimate decision to terminate Webb. He selected Webb based on customers, work, sales, and input received from his supervisor, Davetta Garcia, regarding Webb's performance and ability to contribute to the organization. Customers, work, and sales are objective factors. Garcia, too, employed some objective factors in her evaluations, ranking employees based on the number of accounts the employee worked with, the employee's performance and job evaluations, whether the individual was a team player, and the additional benefits the individual contributed to her group. While Garcia's ranking included both objective and subjective considerations, there is no evidence in the record that Webb scored higher on the objective factors (e.g., number of accounts and evaluations) than his younger coworkers. It is not our role to re-compare the qualifications of these employees to determine whether some other employee may have satisfied more RIF criteria than Webb. "Our role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses

16

employers' business judgments." Simms, 165 F.3d at 1330 (internal quotation marks and citation omitted); see also Doan, 82 F.3d at 978 ("[T]he manner in which a company chooses to conduct a RIF is within the company's sound business discretion . . . .").

Webb also contends that younger employees were not included in the RIF. Webb's allegation is factually incorrect. It is undisputed that of the forty-nine employees included in the RIF, twenty-five were under the age of forty, and twenty-four were forty years old and over.

Last, Webb disputes the fact that his position was eliminated because, he contends, his responsibilities were still performed after the layoff. In a RIF case, a plaintiff may show pretext by presenting evidence that his job was not eliminated. Abuan, 353 F.3d at 1169. "[T]he test for position elimination [, however,] is not whether the responsibilities were still performed, but rather whether the responsibilities still constituted a single, distinct position." Furr, 82 F.3d at 988. Thus the fact that Webb's responsibilities existed after the layoff is not evidence of discrimination. Webb contends that a younger employee, Jayson Pearce, assumed his duties after his termination. This, however, is factually incorrect. Pearce assumed Webb's responsibilities when Webb left his position as Senior Network Developer in the Network Development Department in 2001 to became a Program Manager in the Customer Operations Department. Pearce did

not assume his responsibilities after the January 2003 RIF. The district court found that Webb presented evidence that his job duties were divided among other employees. While we do not believe the record is quite that clear as to the division of Webb's responsibilities, there is no evidence that his duties continued within a single, distinct position after his termination.

### f. Webb's remaining evidence

Webb makes two final arguments regarding pretext: 1) Level 3 initially hired older employees in order to "milk" their expertise; and 2) instead of terminating Webb in June 2001, Level 3 placed him in another position which made him vulnerable to future layoffs. Webb has presented no evidence to support his conspiracy theory. Both allegations are based purely upon speculation, and speculation is insufficient to raise a genuine issue of material fact as to pretext. See Doan, 82 F.3d at 977 ("Speculation . . . will not suffice for evidence.")

Based on the foregoing, Webb has failed to present sufficient evidence of pretext to preclude summary judgment on his age discrimination claim.

### Retaliation claim

The anti-retaliation provision of the ADEA forbids an employer from discriminating against an employee because he or she "has opposed any practice made unlawful" by the statute, or because he or she "has made a charge, testified,

18

assisted, or participated in any manner in an investigation, proceeding, or litigation" under the statute. 29 U.S.C. § 623(d).

ADEA retaliation claims are analyzed under the analytical framework set forth in McDonnell Douglas. Lujan v. Walters, 813 F.2d 1051, 1058 (10th Cir. 1987). Initially, under this framework, the plaintiff must establish a prima facie case. Anderson v. Phillips Petroleum Co., 861 F.2d 631, 634 (10th Cir. 1988) (citation omitted), overruled on other grounds by Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993). The burden then shifts to the employer to offer a legitimate non-retaliatory reason for the adverse action. Id. (citation omitted). Once the employer offers such a reason, the burden shifts back to the plaintiff to raise a genuine dispute of material fact as to whether the employer's proffered reason is pretextual. Id. (citations omitted).

To establish a prima facie case of retaliation, Webb must demonstrate: 1) he availed himself of a protected right under the ADEA, such as opposing an employer's discrimination on the basis of age; 2) he was adversely affected by an employment decision; and 3) a causal connection between the two actions. MacKenzie v. City and County of Denver, 414 F.3d 1266, 1278-79 (10th Cir. 2005).

Webb contends that Level 3 retaliated against him for discussing his belief with human resources on November 14, 2002, that he had been discriminated

19

against on account of age. Webb argues that we should infer retaliation from the temporal proximity between the protected activity and the adverse action, which in this case amounts to approximately two months. He also contends that his discussion with Leddy following Webb's termination is evidence that Leddy was aware of Webb's prior discussion with Isom.[2]

A causal connection "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir. 1982) (citation omitted). "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001) (citation omitted). Temporal proximity of two months between the protected conduct and an adverse employment action may be sufficient to establish a prima facie case of retaliation. See Annett v. Univ. of Kan., 371 F.3d 1233, 1240 (10th Cir. 2004) (concluding that a period of two to three months between the protected activity and the alleged

_____

[2]According to Webb, after his termination, he and Leddy had a discussion during which Webb expressed certain concerns about his subordinates. Webb contends that "[o]ut of the blue, [Leddy] asked me if I believed that I had been discriminated against." App. at 188. In response, Webb stated that he did not intend to complain about discrimination at this time. Webb now argues that Leddy's question is evidence that Leddy was "well aware" of Webb's prior complaint to Isom. Appellant Br. at 25.

retaliatory action was sufficient to establish causation); <u>Anderson v. Coors Brewing Co.</u>, 181 F.3d 1171, 1179 (10th Cir. 1999) (assuming that two months and one week between protected activity and adverse action was sufficient to support a prima facie case of retaliation);[3] <u>Ramirez v. Oklahoma Dep't of Mental Health</u>, 41 F.3d 584, 596 (10th Cir. 1994) (concluding that a one and one-half month period between protected activity and adverse action may establish causation); <u>but see</u> <u>Meiners v. Univ. of Kan.</u>, 359 F.3d 1222, 1231 (10th Cir. 2004) (a minimum of two months and one week and a maximum of just under three months between the protected conduct and the adverse action is "probably too far apart . . . to establish causation by temporal proximity alone."). Though we have not definitively held that two months between the protected activity and

---

[3]In <u>Coors Brewing Co.</u>, however, we did not explicitly find that two months was sufficient:

> For example, we have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. . . . By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation. . . . Thus, we find ourselves three weeks short of three months and three weeks past one and one-half months. We need not decide on which side the line should be drawn, however, because assuming two months and one week is sufficient to support a prima facie case of retaliation, Plaintiff cannot prove that Defendant's proffered reason for terminating her was pretextual.

<u>Coors Brewing Co.</u>, 181 F.3d at 1179 (internal citations omitted).

21

the adverse action is sufficient in itself to establish causation, on these facts, we assume, as we did in Coors Brewing Co., that two months is sufficient.

While, as a general rule, temporal proximity may be sufficient to establish a causal connection between the protected activity and the adverse action, we still require a plaintiff to show that the individual who took the adverse action against plaintiff also knew of the employee's protected activity. See Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993) (holding that a plaintiff must show that the individual who took the adverse action against him or her knew of the employee's protected activity). Here, Webb failed to raise a genuine issue of material fact as to whether Leddy knew of Webb's protected activity, i.e., his statement to Isom concerning discrimination. Webb contends that following his termination, Leddy asked him if he believed he had been subject to discrimination. Webb argues that this statement by Leddy is evidence that Leddy was aware of Webb's prior conversation with Isom in human resources. We disagree. Leddy denies knowing, and Isom denies telling Leddy, about the meeting prior to Webb's termination. Webb did not present any evidence rebutting this testimony. Assuming Leddy made such an inquiry after Webb's termination, we do not believe a reasonable juror could infer, from that statement alone, that Leddy had knowledge of Webb's prior meeting with Isom.

Alternatively, even if Webb had set forth a prima facie case of retaliation,

22

Webb's claim necessarily fails on the issue of pretext. As previously noted with respect to his discrimination claim, Level 3 set forth a legitimate, non-retaliatory reason for its decision to terminate him – a RIF – and Webb failed to present sufficient evidence that Level 3's proffered reason was a pretext for unlawful discrimination or retaliation.

The judgment of the district court is AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge